UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DONALD KRESSE,<br><br>　　Plaintiff,<br><br>　　v.<br><br>CABELA'S WHOLESALE, INC.,<br><br>　　Defendant.<br>_____<br>CABELA'S WHOLESALE, INC.,<br><br>　　Third-Party Plaintiff,<br><br>　　v.<br><br>FACILITYSOURCE, LLC,<br><br>　　Third-Party Defendant. | Case No. 2:18-cv-00013-BLW<br><br>**MEMORANDUM DECISION & ORDER** |

# I
# INTRODUCTION

Before the Court are two motions for summary judgment. Defendant Cabela's Wholesale, Inc. moves for summary judgment against Plaintiff Donald Kresse, and Third-Party Defendant FacilitySource, LLC joins that motion. *See* Dkts. 22, 23. Additionally, FacilitySource moves for summary judgment against

Third-Party Plaintiff Cabela's Wholesale, Inc. *See* Dkt. 21. The Court heard argument on January 23, 2019 and now issues its written decision. For the reasons explained, the Court will deny Cabela's motion for summary judgment and will grant in part and deny in part FacilitySource's motion.

## II
## UNDISPUTED FACTS

### A.   Plaintiff's Slip and Fall

On the morning of December 23, 2015, Kresse drove to Cabela's in Post Falls, Idaho to do some holiday shopping. It had been snowing, and the parking lot was covered with snow. On his way into the store, Kresse slipped and fell in the parking lot, injuring his left leg and ankle.

On December 29, 2015 – six days after the accident – Kresse had surgery. He had a second surgery in March 2016, and roughly two years after that, he had a third surgery to remove hardware that had been placed in his left leg and ankle during the earlier surgeries.

### B.   Defendant Cabela's Agreement with FacilitySource

On December 31, 2015, eight days after Kresse's accident, Cabela's and FacilitySource entered into a written Facilities Management Master Services Agreement. *See Ex. A to Anderson Dec.*, Dkt. 21-2, ¶ 23. Under the terms of this agreement, FacilitySource agreed to provide snow and ice removal for Cabela's.

As for the commencement date, the agreement states:

> The date of commencement shall be the date of this Agreement [December 31, 2015] unless provision is made for the date to be fixed in a notice to proceed issued by Owner.

*Id.* ¶ 3.1. There is no evidence that Cabela's issued a notice to proceed under this section. The agreement further provides, with some limitations, that FacilitySource will indemnify Cabela's for claims and losses "arising out of, or resulting from performances of the Services . . . ." *Id.* ¶ 7.1.

Before the parties entered into this written agreement, however, and also before Kresse's accident on December 23rd, FacilitySource verbally agreed to provide snow removal services for Cabela's. In fact, when the Cabela's manager became aware of the imminent December 23rd snowfall, he contacted FacilitySource to make sure the lot would be plowed. FacilitySource not only confirmed that the lot would be plowed but also reassured Cabela's that the lot would automatically be plowed, with no need for further involvement by Cabela's. *See* Dkt. 25-1, ¶ 2. Cabela's relied upon that assurance. FacilitySource's sub-contractor did plow the Cabela's lot on December 23rd, but not until around 10:00 a.m., after Kresse's accident.

## III
## PROCEDURAL BACKGROUND

Kresse sued Cabela's in December 2017, alleging claims for negligence and

negligent infliction of emotional distress (NIED). *Compl.*, Dkt. 1. Cabela's later filed a third-party complaint against FacilitySource, alleging a claim for indemnification or, in the alternative, contribution under Idaho Code § 6-803(5). *Third Party Compl.*, Dkt. 16.

# IV
# LEGAL STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). There must be a genuine dispute as to any material fact – a fact "that may affect the outcome of the case." *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving

party, and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir.1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir.1988).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Devereaux*, 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex*, 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quotation omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention

to specific triable facts." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

# V
# CABELA'S MOTION FOR SUMMARY JUDGMENT

Cabela's seeks summary judgment on both of Kresse's claims. Cabela's says Kresse's negligence claim fails as a matter of law because he cannot prove causation. As for the NIED claim, Cabela's says Kresse failed to allege physical manifestation of his injury, as required by Idaho law.

A. **Kresse's Negligence Claim**

   1. **Causation**

The elements of negligence are duty, breach, causation, and damages. *McPheters v. Maile*, 395 P.3d 317, 321 (Idaho 2002). Cabela's argues that Kresse cannot establish causation because he did not identify an expert to opine that Cabela's proximately caused his injuries. Kresse, however, suffered a common slip-and-fall injury. Idaho courts have held that if injuries are "of common nature and arise from a readily identifiable cause . . . there is no need for the injured party to produce expert testimony." *Dodge-Farrar v. Am. Cleaning Servs.*, 54 P.3d 954, 958 (Idaho Ct. App. 2002).

Cabela's says the Court cannot rely upon Idaho law to resolve this issue. But it is hornbook law that a federal court, sitting in diversity, applies state substantive

law and federal procedural law. *See generally Erie R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938). Applied here, this means that although federal law governs the procedure for making expert disclosures, state substantive law controls the more basic question of whether Kresse needs expert testimony to establish the causation element of his state-law tort claim. And, as just noted, Idaho courts have said expert testimony is not necessary to establish causation in these types of cases. In fact, in *Dodge-Farrar v. American Cleaning Services*, 54 P.3d 954, 958 (Idaho Ct. App. 2002), the court provided a specific example that is instructive here:

> For example, if a person fell down some steps, landing on a knee, and immediately thereafter felt pain in the knee, saw an open wound on the knee, and within minutes or hours observed that the knee was swelling, that layperson could provide reliable testimony that the pain, wound and swelling were caused by the fall.

*Id.* at 957. *Dodge-Farrar* went on to say that "[a] layperson could also testify that medical care obtained to treat those immediate symptoms was causally related to the fall." *Id.*

Here, Kresse stated that he fell down on the icy parking lot; he heard a snap as he fell; and he had surgery on his leg and ankle because of the injuries he sustained in the fall. This is sufficient to establish causation. The Court will therefore deny Cabela's motion for summary judgment on the negligence claim.

Granted, it may be more difficult for Kresse to establish causation as time goes on, and he had two additional surgeries – the first surgery took place six days

after the accident; the second surgery took place three months later, in March 2016; and the third surgery took place in March 2018. Again, *Dodge-Farrar* is instructive:

> As the claimed symptoms and treatment become more separated in time from the fall, however, the causal relationship becomes more doubtful and tenuous, and expert testimony becomes necessary to establish causation. As time passes, the possibility that prior or subsequent injuries or unrelated disease processes may play a causal role makes lay opinion unreliable and inadequate to sustain a claim. Accordingly, lay testimony on causation must be limited to the symptoms which are proximate enough to the injury that lay opinion can be deemed competent and reliable. Just where within the time continuum the line must be drawn to exclude lay testimony is necessarily a decision committed to the trial court's discretion based upon the facts and circumstances of the particular case.

54 P.3d at 957-59.

Here, viewing the facts in Kresse's favor, and without reliance upon any expert testimony, there is, at a minimum, a genuine dispute of material fact regarding causation on the second and third surgeries. In other words, Kresse's testimony, standing alone, is sufficient to withstand Cabela's summary-judgment motion.

A related issue is whether Kresse may properly rely on testimony from his treating physician, Dr. Byron Humble. To support his response to the pending motion, Kresse submitted an affidavit from Dr. Humble. *See Humble Aff.*, Dkt. 26-7. Dr. Humble stated that Kresse's "initial injury necessitated" all three surgeries

described above, and he also clarified a point of confusion from the medical records. His records indicate that he removed screws used in Kresse's surgery due to an "unspecified complication of internal orthopedic prosthetic device, implant and graft, subsequent encounter." *Id.* ¶ 6. Defense counsel questioned this entry, asking: (1) "Does this mean the problem was caused by a failure of or defect in the hardware?" (2) "Was it a result of medical negligence?" (3) "What is the 'subsequent encounter' referred to?" *Motion Mem.*, Dkt. 22-2, at 7.

In response, Dr. Humble explained that the pre-programmed medical software he uses to generate treatment records required him to "choose the closest description," and that he chose that description simply because it was "the closest description" available for indicating that he was removing the screws, even though screw removal is "standard." *See Humble Aff.*, Dkt. 26-7, ¶¶ 3-6. He clarified that his entry "does not indicate that something was wrong with the syndesmosis screws themselves, . . . ." *Id.* ¶ 6.

Cabela's says Kresse cannot rely on Dr. Humble's affidavit because he did not disclose Dr. Humble as an expert. *See generally* Fed. R. Civ. P. 26(a)(2). As noted, however, Dr. Humble was Kresse's treating physician, and while some circuits have held that treating physicians are experts that must be disclosed under Federal Rule of Civil Procedure 26, *see, e.g., Musser v. Gentiva Health Servs.*, 356 F.3d 751, 756 n.2 (7th Cir. 2004), the Ninth Circuit has not. *See Hoffman v. Lee*,

474 Fed. Appx. 503, 505 (9th Cir. 2012) (unpublished decision) (treating physician could testify despite failure to disclose him as an expert witness).

For all these reasons, the Court will deny Cabela's motion for summary judgment on Kresse's negligence claim.

2. **Lost Overtime**

Cabela's also seeks summary judgment on the lost-overtime portion of Kresse's negligence claim. Cabela's argues that these alleged damages are "grounded in speculation." *Motion Mem.*, Dkt. 22, at 2. In response, Kresse explains that his overtime earnings fluctuated as follows during 2015 to 2018:

| Year | Overtime Wages |
|------|----------------|
| 2015 | $13,294 |
| 2016 | $5,800 |
| 2017 | $10,122 |
| 2018 | $13,140.60 |

*See Kresse Dec.*, Dkt. 26-8, ¶¶ 2-4.

Given that track record, and the dip in overtime earnings for 2016 – the year immediately following the December 2015 injury – the Court does not agree that Kresse's claim for lost overtime wages is speculative as a matter of law. "Reasonable certainty requires neither absolute assurance nor mathematical exactitude; rather, the evidence need only be sufficient to remove the existence of damages from the realm of speculation." *Griffith v. Clear Lakes Trout Co.*, 152 P.3d 604, 611 (Idaho 2007). Cabela's points out that overtime work was not

guaranteed during 2016 (even if Kresse had been able to put in for it) and, further, that there might be other reasons for the dip in overtime wages during 2016. Cabela's is free to make these arguments at trial, but plaintiff has submitted sufficient evidence to take his claim for lost overtime outside the realm of speculation. The Court will therefore deny Cabela's motion for summary judgment on this part of Kresse's negligence claim.

### B. Kresse's Claim for Negligent Infliction of Emotional Distress (NIED)

Next up is Kresse's NIED claim. Under Idaho law, to recover damages for negligent infliction of emotional distress, the plaintiff's alleged emotional distress must be "accompanied by physical injury or physical manifestations of injury." *Brown v. Matthews Mortuary, Inc.*, 801 P.2d 37, 42 (Idaho 1990). Cabela's argues that Kresse "neither alleged nor identified any physical manifestation or injury accompanying" his claim for emotional distress. *Id.* But Kresse has indicated that he suffers from physical symptoms – namely nausea and sweating:

> I especially feel the effects of this injury when I am involved in a call where someone has had a significant ankle injury. There was an incident about 6 weeks ago involving an older gentleman with a serious ankle injury where the bone was nearly piercing the skin. *I began sweating and feeling nauseous, to the point that I had to excuse myself from the scene and let the remainder of the crew provide care.*

*Kresse Dec.*, Dkt. 26-8, ¶ 8 (emphasis added). These facts, viewed in Kresse's favor, create a genuine issue of material fact with respect to his NIED claim. *See*

*generally Brown*, 801 P.2d at 44 (loss of sleep, headaches, and stomach pain are physical manifestations sufficient to prove an accompanying physical injury sufficient to assert a claim for NIED). The Court will therefore deny Cabela's motion for summary judgment on this claim.

## VI
## FACILITYSOURCE'S MOTION FOR SUMMARY JUDGMENT

**A.     Cabela's Contribution Claim**

Turning to Cabela's third-party complaint against FacilitySource, the Court will first address Cabela's contribution claim under Idaho Code § 6-803(5). Cabela's pursued this claim "only to the extent Cabela's and FacilitySource are found to have been joint tortfeasors acting in concert pursuant to Idaho Code § 6-803(5), . . . ." *Third-party Compl.*, Dkt. 16, ¶ 17.

Idaho Code § 6-803(5) provides as follows:

> A party shall be jointly and severally liable for the fault of another person or entity or for payment of the proportionate share of another party where they were acting in concert or when a person was acting as an agent or servant of another party. *As used in this section, "acting in concert" means pursuing a common plan or design which results in the commission of an intentional or reckless tortious act*.

Idaho Code §§6-803(5) (emphasis added). Cabela's does not allege or argue that FacilitySource was "acting as an agent or servant of another party." *Id.* And there are no facts in the record supporting a finding that Cabela's and FacilitySource were pursuing a common plan or design that resulted in the commission of an

intentional or reckless tort. Finally, Cabela's did not oppose FacilitySource's motion on this claim. The Court will therefore grant summary judgment in FacilitySource's favor on the contribution claim.

## B. Cabela's Indemnification Claim

The more difficult issue is Cabela's indemnification claim.

### 1. Contractual Indemnification

FacilitySource says it is entitled to summary judgment on Cabela's indemnification claim because the written agreement between the parties was not in effect on the date of the accident. As already noted, Kresse's accident was on December 23, 2015, and the written agreement between FacilitySource and Cabela's states that it commences eight days later, on December 31, 2015. Cabela's has not pointed to any evidence in the record establishing that the contract was intended to, or did, start at an earlier date. To be sure, it appears that there was an oral agreement for snow removal services in place as of December 23, 2015, but that fact, standing by itself, does not demonstrate that the subsequent agreement was intended to be in effect at an earlier date – particularly when the written agreement unambiguously states that it commences on December 31, 2015. The Court will therefore grant summary judgment in FacilitySource's favor on Cabela's claim for contractual indemnification.

## 2. Equitable Indemnification

Cabela's fallback position is that regardless of whether the written contract was in effect on December 23, 2015, Cabela's complaint nevertheless entitles it to pursue an equitable indemnity theory. FacilitySource does not address the substance of such a claim. Instead, FacilitySource says Cabela's third-party complaint is restricted to a claim for contractual indemnity.

The Court is not persuaded that the complaint should be read so narrowly. Granted, the third-party complaint explicitly refers to the written agreement, alleging that "[p]ursuant to the MSA [*i.e.,* the written contract], FacilitySource owes Cabela's a duty to indemnify it from any and all claims resulting from FacilitySource's performance or failure to perform services required under the MSA." *Third-Party Compl.*, Dkt. 16, ¶ 13. But the complaint also contains allegations relating to facts that pre-date the written contract, including, for example, an allegation that given the expected weather conditions on December 23, 2015, FacilitySource was "automatically" obligated to provide snow removal services but FacilitySource nevertheless failed to provide those services. *See id.* ¶¶ 10-11.

Given these allegations, the Court is not persuaded that Cabela's must amend its complaint to pursue an equitable indemnity claim. And because FacilitySource has not addressed the merits of an equitable indemnity claim in its

pending motion, the Court will deny the motion to the extent FacilitySource seeks summary judgment on an *equitable* indemnity claim. Nevertheless, given FacilitySource's representations that it has been viewing this claim solely as a contractual indemnity claim, the Court will deny the motion without prejudice. If FacilitySource wishes to file a motion for summary judgment addressing the merits of Cabela's equitable indemnity claim, it may do so within 30 days of this Order. By allowing FacilitySource to file such a motion, the Court is not offering any opinion as to whether FacilitySource will prevail.

## ORDER

**IT IS ORDERED that**:

1. FacilitySource's Motion for Summary Judgment (Dkt. 21) is **GRANTED IN PART and DENIED WITHOUT PREJUDICE IN PART.**

2. Cabela's Motion for Summary Judgment (Dkt. 22) is **DENIED.**

DATED: April 4, 2019

_____
B. Lynn Winmill
U.S. District Court Judge